UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

**Eastern District of Kentucky**
**FILED**

OCT 2 0 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-650-GWU

JAMES A. COBB, JR.,                                           PLAINTIFF,

VS.                        **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                   DEFENDANT.

### INTRODUCTION

The plaintiff originally filed his application for Supplemental Security Income

(SSI) in 2000, alleging disability due to nerves, a lazy eye, back problems, and

seizures. (Tr. 108). After a period of reconsideration prompted by the Court's

remand of June 20, 2004, Cobb v. Barnhart, London Civil Action No. 03-274-GWU

(E.D. Ky.) (Tr. 309-19), the case is again before the Court on cross-motions for

summary judgment.

### APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining

whether the findings of fact made are supported by substantial evidence. Jones v.

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991);

Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir.

1990). This "substantial evidence" is "such evidence as a reasonable mind shall

accept as adequate to support a conclusion;" it is based on the record as a whole

1

and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process. Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P,

2

Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

3

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Court's remand in 2004 was based on the ALJ's decision to discount the report and IQ scores obtained by a consultative psychological examiner, Mary Allen Genthner, who obtained a verbal IQ score of 70, a performance IQ of 62, and a full-scale IQ of 64, as well as achievement test results showing a third grade level of reading, spelling, and arithmetic. (Tr. 267-70). One of the psychologist's diagnoses was mild mental retardation. (Tr. 271). The ALJ discounted the results because of the plaintiff's history of drug use which was not admitted to Ms. Genthner, the estimated average IQ by a previous mental status examiner, Dr. Kevin Eggerman, and school records showing a first grade IQ test score of 95, suggesting a lack of longitudinal evidence of mental retardation. (Tr. 20, 66, 177, 318). The Court noted, however, that Ms. Genthner herself opined that the IQ scores were reliable, and that the plaintiff's school records also indicated that he was given an IQ score of 67 on a different test in the fifth grade. (Tr. 137, 318-19). Since no medical or psychological expert had reviewed the entire transcript, the ALJ's decision to discount the Genthner scores was not based on any expert opinion. A remand was ordered to consider the

4

possibility of "significantly subaverage intellectual functioning with the deficits and adaptive functioning initially manifested prior to age 22," as required to meet the Commissioner's Listing of Impairment 12.05C. (Tr. 319).

On remand, the ALJ submitted interrogatories to Suzann O'Koon, Ph.D., a psychologist. Dr. O'Koon opined that the fifth grade score of 67 was erroneously placed under a column headed "IQ," and it had actually been the result of a "KEST" achievement test. (Tr. 339). She felt that the plaintiff's school record showed achievement scores which were near, and then at, grade level, which would not have been possible for a child who was mentally retarded. (Id.). The plaintiff's decline in achievement in the higher grades "would likely be due to motivational or environmental factors." (Id.). She also opined that the plaintiff's work history, operating equipment in construction and as a telemarketer, was inconsistent with mental retardation, given his testimony that he had left these jobs because of his nerves, not because of inability to perform the jobs. (Id.). Dr. O'Koon also felt that Ms. Genthner would have questioned the validity of her testing had records indicating the plaintiff's drug usage been available at the time of her testing. (Id.). Dr. O'Koon concluded that the plaintiff had "adequate intellectual ability," and a history of being able to carry out instructions, maintain the mental effort to complete routine tasks, and to adapt to the stress and pressure of a routine work environment. (Tr. 338-9). She felt that he could also relate adequately to the public, co-workers, and supervisors. (Id.).

5

The ALJ presented a vocational expert (VE) a hypothetical question asking whether any jobs could be performed by a person of the plaintiff's age, with a third grade reading level, and a restriction to only simple tasks in instructions in routine settings, could perform any jobs if he were precluded from work involving exposure to hazards, heights, dangerous or moving machinery, no climbing of ropes, ladders, or scaffolds, and only occasional stair climbing. (Tr. 401). The VE responded that there were jobs, and proceeded to name them and give the numbers in which they existed in the state and national economies. (Tr. 401-2).

On appeal, Mr. Cobb does not challenge the physical factors, which were consistent with the opinion of a state agency reviewing physician who examined a portion of the record (Tr. 210-17), or the portion of the question describing him as being capable of performing simple tasks and instructions in a routine setting. The plaintiff contends that the hypothetical question inadequately portrayed his illiteracy, and complains generally that the ALJ went to "extreme measures to discredit" the Genthner IQ scores. However, the ALJ followed the Court's remand order in obtaining an opinion from a medical expert regarding the plaintiff's intellectual functioning on a longitudinal basis, and the expert provided a reasonable explanation for the apparently low IQ score in the plaintiff's school records. Therefore, the Court concludes that substantial evidence now supports a determination that the plaintiff did not suffer from significantly subaverage intellectual functioning manifested prior to age 22. There is also substantial evidence to support a conclusion that he was not currently functioning in the range of mild mental retardation.

6

Cobb

The plaintiff's other contention on appeal is that the plaintiff's illiteracy was not cited to vocational expert. As the plaintiff himself points out in his brief, however, the Sixth Circuit has cited with approval testimony indicating that third grade or lower reading ability is equivalent to functional illiteracy. Skinner v. Secretary of Health and Human Services, 902 F.2d 447, 449 (6th Cir. 1990). The plaintiff's testimony was that he could read some small words of the newspaper, but not large ones. (Tr. 383). Given that the ALJ specified "no more than a third grade reading level" in the hypothetical question, the question of whether or not the plaintiff was described as "illiterate" in the hypothetical question is a moot point. In Skinner, the plaintiff's status as being illiterate rather than having a "marginal" education meant that the Commissioner's Medical-Vocational Guidelines directed a conclusion that he was disabled. Id. at 450. The Medical-Vocational Guidelines are not at issue in Mr. Cobb's case. The hypothetical question contained an accurate description of his reading level as found by Ms. Genthner, and the VE identified jobs which such a person could perform.

The decision will be affirmed.

This the $20$ day of October, 2006.

G. WIX UNTHANK
SENIOR JUDGE

7